IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03249-WJM-NYW

MARIA CHAVEZ,
CHELSA PARSONS, and
NICOLE GARNER,

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY, COLORADO, in its official capacity,
THE LAKE COUNTY SHERIFF'S OFFICE, a governmental entity,
RODNEY FENSKE, in his official and individual capacity,
FERNANDO MENDOZA, in his official and individual capacity,
MARY ANN HAMMER, in her official and individual capacity,

    Defendants.

## ORDER ON MOTION TO COMPEL

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiffs Maria Chavez, Chelsa Parsons, and Nicole Garner's (collectively, "Plaintiffs") Motion to Compel Production of Documents Relevant Pursuant to Defendant's *Faragher/Ellerth* Defense ("Motion to Compel" or "Motion"), filed June 21, 2019. [#74]. This court considers the Motion pursuant to 28 U.S.C. § 636(b) and the Memorandum dated June 24, 2019, [#76]. Having reviewed the Motion, the Parties' briefing and tendered exhibits, the applicable case law, and being sufficiently advised in its premise, this court **GRANTS IN PART and DENIES IN PART** the Motion to Compel for the following reasons.

## BACKGROUND

Throughout 2017 and 2018, Plaintiffs worked as dispatchers for Defendant the Lake County Sheriff's Office ("LCSO"). *See* [#7 at ¶¶ 3-5]. Each resigned, however, following an

investigation into Plaintiffs' (and others) complaints that Defendants Rodney Fenske and Fernando Mendoza sexually harassed Plaintiffs and other female employees and then retaliated against Plaintiffs for reporting the alleged sexual harassment. *See* [*id.* at ¶¶ 11-43, 52-72]. Plaintiffs' complaints spurred two investigations: the first conducted by the Lake County District Attorney's Office; the second conducted by a private law firm hired by Defendant Board of County Commissioners of Lake County, Colorado (the "County"). *See* [*id.* at ¶¶ 42-43].[1] Despite the investigations, Plaintiffs allege the County, LCSO, and Defendants Fenske, Mendoza, and Hammer (collectively, "Defendants") perpetuated a hostile working environment and continued to mistreat Plaintiffs. *See* [*id.* at ¶¶ 35-86].

Plaintiffs then initiated the instant action against Defendants in this District on December 18, 2018. *See* [#1]. Pursuant to their Amended Complaint, filed as a matter of course pursuant to Rule 15(a)(1)(A), Plaintiffs assert claims against various Defendants for violations of Plaintiffs' First and Fourteenth Amendment rights under 42 U.S.C. § 1983 as well as violations of Title VII of the Civil Rights Act claims, 42 U.S.C. § 2000e *et seq.*, for hostile work environment and retaliation. *See generally* [#7].

Relevant here, LCSO filed its Answer to the Amended Complaint on April 29, 2019. *See* [#39]. As an Affirmative Defense LCSO asserts it "exercised reasonable care to prevent and/or promptly address any allegations of sexually harassing, inappropriate[,] or discriminatory treatment or behavior" and Plaintiffs "unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant LCSO to avoid and/or mitigate the conduct and

---

[1] The District Attorney's investigation ultimately resulted in Defendant Mendoza being indicted on seven counts of misconduct, two of which dealt with Plaintiffs' allegations of sexual harassment. *See* [#7 at ¶ 11]. On December 10, 2018, a jury convicted Defendant Mendoza on two charges relating to sexual misconduct against a non-party, but a trial as to the two counts concerning Plaintiffs has yet to occur. *See* [*id.* at ¶¶ 90-91].

harm alleged in the Amended Complaint," [*id.* at 17], otherwise known as the *Faragher/Ellerth* defense.[2] Plaintiffs have moved to strike LCSO's (and any other) invocation of the *Faragher/Ellerth* defense pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and that Motion remains pending before the presiding judge, the Honorable William J. Martinez. *See* [#25].

On May 23, 2019, LCSO filed a Motion to Quash Subpoena seeking to quash Plaintiffs' subpoena, which sought all materials concerning the investigation of Plaintiffs' sexual harassment complaints, served on LCSO's attorney Catherine Tallerico; LCSO moved to quash on attorney-client privilege and work product doctrine grounds. *See* [#64]. The undersigned struck the Motion to Quash Subpoena for failure to follow this court's informal discovery dispute procedure, *see* [#66], and set Plaintiffs and LCSO for an informal discovery dispute conference on June 5, 2019, *see* [#67; #69]. At the discovery conference this court directed LCSO to produce a privilege log reflecting which sought-after documents were protected by the attorney-client privilege and directed Plaintiffs to file the instant Motion to Compel. *See* [#69].

Plaintiffs filed the instant Motion to Compel on June 21, 2019. [#74]. Plaintiffs now seek to compel production of several documents designated as protected under LCSO's privilege log, [#74-1], but which Plaintiffs argue are related to LCSO's *Faragher/Ellerth* defense and thus are not subject to attorney-client privilege protection. *See generally* [#74; #84]. Specifically, Plaintiffs seek documents bearing Bates Nos. 1, 2-3, 4, 6-7, 15, 16, 33, 58-59, 60-79, 80, 94, 96-97. [#74 at 2]. While acknowledging the *Faragher/Ellerth* defense waives the attorney-client privilege as to documents and communications surrounding the investigation of Plaintiffs' complaints, LCSO argues the *Faragher/Ellerth* defense does not waive the attorney-client

---

[2] *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

3

privilege as to all communication between Ms. Tallerico and LCSO or others. *See* [#79]. Because the Motion to Compel is ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARD

Pursuant to Rule 37(a)(1), a party may move for a court order compelling disclosure or discovery and must certify that she "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). A motion to compel may include a party's failure to produce documents requested pursuant to Rule 34. *See* Fed. R. Civ. P 37(a)(3)(B)(iv). "The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D 561, 566 (D. Colo. 2010). Ultimately, "[t]he administration of the rule[] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

## ANALYSIS

Because subject matter jurisdiction in this action arises from 28 U.S.C. § 1331, federal common law governs the applicability of the attorney-client privilege. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006) (citing Fed. R. Evid. 501 ("The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege" in federal-question cases)). The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law" and "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney

in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotation marks omitted).

Under federal common law, the attorney-client privilege protects communications (1) where legal advice of any kind is sought; (2) from a professional legal advisor in her capacity as such; (3) the communications relate to that purpose; (4) made in confidence; (5) by the client; (6) are at her instance permanently protected; (7) from disclosure by herself or the legal advisor; (8) unless the protection is waived. *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 636 (D. Colo. 2012). Federal courts strictly construe the privilege. *See In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998). Indeed, communications do not become privileged solely because they involve an attorney. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995). Rather, there must be a connection between the subject of the communication and the rendering of legal advice, and legal advice must predominate for the communication to be protected. "[A]cts or services performed by an attorney during the course of representation are not within the privilege because they are not communications," and "the subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are not protected by the privilege." *Coorstek, Inc. v. Reiber*, No. CIVA08-CV-01133-KMT-CBS, 2010 WL 1332845, at *7 (D. Colo. Apr. 5, 2010) (citations omitted). And "[t]he party seeking to assert [the] privilege has the burden of establishing its applicability." *Motley*, 71 F.3d at 1550.

The attorney-client privilege is not absolute and may be waived. *See generally United States v. Ary*, 518 F.3d 775, 783-84 (10th Cir. 2008). Pertinent here, "[c]ourts have interpreted an assertion of the *Faragher/Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response

5

to employee complaints of discrimination because doing so brings the employer's investigations into issue." *E.E.O.C. v. Outback Steakhouse of FL, Inc.*, 251 F.R.D. 603, 611 (D. Colo. 2008) (citations omitted) (collecting cases). In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court of the United States "determined that an employer should be held vicariously liable [under Title VII of the Civil Rights Act] for a supervisor's harassment if the harassment was made possible by abuse of supervisory power." *Helm v. Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011). To avoid vicarious liability under the *Faragher/Ellerth* defense, the employer must demonstrate:

1. it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and

2. the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 652-53 (10th Cir. 2013) (quotation marks omitted).

There is no dispute that LCSO asserts the *Faragher/Ellerth* defense in its Answer, *see* [#39 at 17], and LCSO does not dispute the general proposition that the assertion of the *Faragher/Ellerth* defense waives the attorney-client privilege as to investigations and remedial efforts regarding an employee's complaints of harassment. LCSO does, however, dispute the breadth of this waiver. It argues it produced all documents relevant to its *Faragher/Ellerth* defense and is withholding only those communications between Ms. Tallerico and LCSO or others that contain legal advice not relevant to its *Faragher/Ellerth* defense, because such communications related to its attorney's mental impressions, conclusions, opinions, and legal theories that remain protected from discovery. *See* [#79 at 9-13].

Plaintiffs maintain that all but one of the withheld documents "are communications between Defendant Fenske and Ms. Tallerico and appear to be temporally and factually related to the investigation and LCSO's response," with some communications "dated prior to the termination of Defendant Mendoza." [#74 at 7]; *see also* [*id.* at 10]. According to Plaintiffs, the wavier is not limited and/or partial in scope, and thus they are entitled to the withheld documents to better understand the remedial steps LCSO took upon receiving Plaintiffs' complaints, including Ms. Tallerico's involvement in (and potential shaping of) the investigation. *See* [#74 at 10-13; #84 at 2-10].

On August 28, 2019, per the undersigned's Minute Order, LCSO provided all withheld documents (including those not subject to the instant Motion) under Level 3 Restriction for *in camera* review. *See* [#94]. Upon review of the documents sought by Plaintiffs, I find that some of the information reflected in these documents are not protected by the attorney-client privilege at all, as they do not reflect any legal advice and concern administrative rather than legal tasks. *Sterling Const. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-CV-02224-MSK-MJW, 2011 WL 3903074, at *14 (D. Colo. Sept. 6, 2011). For instance, the act of scheduling interviews for the investigation is not legal advice, *id.*, nor is conveying information regarding what one of the Plaintiffs told the outside investigator about potential additional witnesses. *Id.* at *15 (holding that "[w]here an attorney is acting as a conduit for non-confidential information, the client may not invoke attorney-client privilege with regard to that communication."). Similarly, messages transmitting confidential letters or the final report are not legal advice justifying protection under the attorney-client privilege. *Id.* at *14 (observing "like the fax cover sheet [], it does little more than memorialize that a transmission of information occurred."). Indeed, the underlying

Investigative Report that has already been disclosed cannot be re-cloaked in the attorney-client privilege.

Even if these documents would otherwise be protected under the attorney-client privilege, the vast majority of the documents at issue concern and/or relate to LCSO's *Faragher/Ellerth* defense and therefore must be produced subject to Defendants' waiver. All of the communications occur in a prelitigation time frame. In addition, all documents appear relevant to the first prong of the *Faragher/Ellerth* defense, i.e., LCSO exercised reasonable care to prevent and correct promptly any sexually harassing behavior(s). *See Debord*, 737 F.3d 653-54 ("An employer acts reasonably as a matter of law to prevent harassment if it adopted valid sexual harassment policies and distributed those policies to employees via employee handbooks, even if it either provided no sexual harassment training or provided training only to managers," and "the most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." (brackets and internal quotation marks omitted)). Specifically, much of the communication between Ms. Tallerico and Defendant Fenske and others dealt with the facilitation of the investigation itself; the findings and conclusions of the investigator's final report; and the remedial efforts suggested as a result of the investigator's final report. *See Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 41-49 (E.D.N.Y. 2013) (concluding the *Faragher/Ellerth* defense waived the attorney-client privilege as to outside counsel's communications regarding the supervision and direction of the investigation, including recommendations of courses of action to take and the findings of the investigation); *Jones v. Rabanco, Ltd.,* No. C03-3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug. 18, 2006) (holding that the attorney-client privilege is waived as to the investigation and remedial efforts that the defense has put at issue through the assertion of the *Farragher/Ellerth* defense).

8

Further, to the extent LCSO believes these documents contain Ms. Tallerico's legal advice, opinions, or impressions, most of the documents reveal that Ms. Tallerico provided opinions and recommendations as to the remedial actions LCSO and Defendant Fenske could utilize. *Outback*, 251 F.R.D. at 611. And it is immaterial whether this occurred after LCSO provided Plaintiffs with the investigator's final report, because the documents speak directly to the *Faragher/Ellerth* defense. *See Angelone v. Xerox Corp.*, No. 09 Civ. 6019(CJS)(JWF), 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) (explaining this waiver encompasses "not only the [investigative] report itself, but [ ] all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."). Nor do most of these communications address the adequacy of LCSO's investigation, which may retain the attorney-client privilege. *See Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("Ms. Tripoli's legal analysis of the adequacy of Defendants' investigation does not fall within the scope of Defendants' waiver. Defendants' pre-litigation investigation is relevant to their affirmative defense, but the attorney's intra-litigation analysis of that investigation is not.").

There are certain exceptions to the court's order regarding disclosure. Some communications reflect legal advice that does not arise from the investigation or reflect the attorney's mental impressions and opinions regarding the investigation. These communications are properly subject to the attorney-client privilege and should be redacted to maintain that privilege.

Accordingly, I rule as follows as to the withheld documents that are subject to the instant Motion to Compel:[3]

---

[3] Plaintiffs' Motion to Strike the *Faragher/Ellerth* defense is still pending before Judge Martinez, and this court does not pass upon the potential effect of a ruling that Motion to Defendants' invocation of the attorney-client privilege as to these documents.

| Document | Ruling |
|---|---|
| Bates No. 1 | Scheduling interviews not privileged; otherwise waived |
| Bates No. 2-3 | Scheduling interviews not privileged; otherwise waived |
| Bates No. 4 | Not privileged |
| Bates No. 6-7 | Waived as to summary of investigation and specific advice regarding remediation by counsel; **redact specific advice of counsel not arising from investigation**; otherwise, not privileged |
| Bates No. 15 | Not privileged |
| Bates No. 16 | Waived as to specific advice regarding remediation by counsel; **redact specific advice of counsel not arising from investigation**; otherwise, not privileged |
| Bates No. 33 | Not privileged |
| Bates No. 58-59 | Waived as to summary of investigation and specific advice regarding remediation by counsel; **redact specific advice of counsel not arising from investigation**; otherwise, not privileged |
| Bates No. 60-79 | Waived as to summary of investigation and specific advice regarding remediation by counsel; **redact specific advice of counsel not arising from investigation**; otherwise, not privileged |
| Bates No. 80 | Waived as to specific advice regarding remediation by counsel |
| Bates No. 94 | **Redact specific advice by counsel not arising from investigation**; otherwise, not privileged |
| Bates No. 96-97 | **Redact specific advice by counsel not arising from investigation**; otherwise, not privileged |

*See Austin v. City & Cty. of Denver ex rel. Bd. of Water Comm'rs*, No. CIVA05-CV01313-PSF-CBS, 2006 WL 1409543, at *8 (D. Colo. May 19, 2006). To facilitate production, this court has redacted the communications subject to the attorney-client privilege and returned such documents to LCSO for production to Plaintiffs.

## CONCLUSION

Therefore, **IT IS ORDERED** that:

(1)    Plaintiffs' Motion to Compel [#74] is **GRANTED IN PART and DENIED IN PART**; and

(2)    LCSO shall produce the withheld documents, Bates Nos. 1, 2-3, 4, 6-7 (redacted), 15, 16 (redacted), 33, 58-59 (redacted), 60-79 (redacted), 80, 94 (redacted), 96-97 (redacted), on or before **September 20, 2019**.

DATED:  September 18, 2019

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge