**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-3249-WJM-NYW

MARIA CHAVEZ,
CHELSA PARSONS, and
NICOLE GARNER,

       Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY, COLORADO, in its
official capacity;
THE LAKE COUNTY SHERIFF'S OFFICE, a governmental entity;
RODNEY FENSKE, in his official and individual capacity;
FERNANDO MENDOZA, in his official and individual capacity;
MARY ANN HAMMER, in her official and individual capacity,

       Defendants.

---

## ORDER DENYING LAKE COUNTY'S MOTION TO DISMISS

---

       Plaintiffs Maria Chavez, Chelsa Parsons, and Nicole Garner bring this lawsuit against the Board of County Commissioners of Lake County, Colorado ("Lake County" or "County"), the Lake County Sheriff's Office ("Sheriff's Office"), former Lake County Sheriff Rodney Fenske ("Sheriff Fenske"), former Lake County Undersheriff Fernando Mendoza ("Undersheriff Mendoza"), and the Sheriff's Office's dispatch supervisor, Marianne Hammer ("Hammer"). Plaintiffs allege various causes of action arising from sexual harassment they experienced while working for the Sheriff's Office.

       Currently before the Court is Lake County's Motion to Dismiss Plaintiffs' Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P 12(b)(6). (ECF No. 20.) For the reasons explained below, the motion is denied.

# I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

# II.  BACKGROUND

The Court accepts the following as true for purposes of Lake County's motion.

Plaintiffs worked as dispatchers at the Sheriff's Office until their departures in November 2017 (Chavez and Garner) and October 2018 (Parsons).  (¶¶ 3–5.)[1]  For much of their time there, they faced a sexually hostile work environment due to frequent and prolonged sexual harassment by Undersheriff Mendoza, whose conduct was "perpetuated" by Sheriff Fenske and others.  (¶¶ 12–14, 16–28.)  Mendoza also

---

[1] All "¶" citations, without more, are to the Amended Complaint (ECF No. 7), which is the currently operative complaint.

explicitly discouraged complaints to the County's human resources department, asserting that the Sheriff's Office was primarily responsible for its own human resources matters.  (¶¶ 30–34.)

In October 2017, Plaintiff Garner complained to a sheriff's deputy, who then relayed Garner's accusations to a Lake County deputy district attorney.  (¶¶ 40–41.) The district attorney's office opened an investigation into Mendoza's conduct, and the County hired a law firm, Lyons Gaddis Kahn Hall Jeffers Dworak & Grant, P.C. ("Lyons Gaddis"), to conduct a separate investigation into Garner's complaint.  (¶¶ 42–43.)

Plaintiffs remained employed at the Sheriff's Office, and specifically working alongside Undersheriff Mendoza, during the two investigations.  (¶¶ 46–47.)  They found the situation stressful.  (¶ 48.)  In a conversation with Plaintiff Chavez, Lake County's director of human resources, Whittney Smyth-Smith, conceded that Chavez was "understandingly, nervous" about the situation but "claimed that nothing could be done."  (¶¶ 49–51.)

The situation soon became even more stressful.  In retaliation against Plaintiffs, Sheriff Fenske "informed the entire Sheriff's Office staff that the 'solution' to the sexual harassment complaints was for everyone to avoid the dispatch area, where [Plaintiffs] worked, essentially alienating them."  (¶ 58.)  As a result, "no one was available to cover the phones for [Plaintiffs] in their absence.  It became virtually impossible for [them] to step away from their desks for any amount of time, even to use the restroom."  (¶ 59.) Then Plaintiffs' supervisor, Hammer, "sent an email to the entire office staff that the office water cooler, coffee machine, and refrigerator would be removed from the dispatch area."  (¶ 60.)  This effectively "deprived [Plaintiffs] of food and drink during

their shifts, because they could not leave the dispatch office in case the phone rang." (¶ 61.) Sheriff Fenske also arranged for constant video surveillance of the dispatch office. (¶ 63.)

On November 7, 2017, Plaintiffs gave interviews to the news media about the situation, which were broadcast on television and the Internet that same day. (¶¶ 67–68.) One week later (November 14), Chavez resigned due to the treatment to which she was being subjected. (¶ 69.) Undersheriff Mendoza resigned or was terminated (Plaintiffs do not specify which) on November 20, 2017. (¶¶ 9, 44.) On November 28, Garner resigned, like Chavez, on account of the treatment she had received since the investigation began. (¶ 71.)

In December 2017, a Lake County grand jury indicted Undersheriff Mendoza on seven charges, including two counts of second-degree official misconduct related to the sexual harassment of Plaintiffs. (¶¶ 11(f), 12.) The other five counts mostly related to sexual exploitation of his stepdaughter, which the prosecutors discovered because the stepdaughter learned of Plaintiffs' complaint against her stepfather and felt emboldened to speak out about his abuse at home. (¶¶ 11(a)–(e), 15, 93.)

Parsons left the Sheriff's Office in October 2018 (¶ 5), but Plaintiffs allege nothing about the circumstances of her departure.

In November 2018, non-party Amy Reyes was elected as the new sheriff of Lake County and "expressed a willingness to rehire Plaintiffs." (¶¶ 74–75.) In December 2018, Undersheriff Mendoza stood trial on the sexual misconduct charges relating to his stepdaughter (the misconduct charges relating to Plaintiffs were severed), and the jury convicted him on two counts, including one felony count. (¶¶ 90–91.) Later the same

month, Plaintiffs filed this lawsuit. (ECF No. 1.)

On January 4, 2019, Reyes "heard back" from the County's human resources department "that the County would not hire any of the Plaintiffs until [this] lawsuit is over." (¶ 76.)

Reyes was sworn in as Sheriff on January 7, 2019. (¶ 80.) That day, she gave a television interview and expressed her desire "to clean up the Sheriff's Office." (¶¶ 80, 85.) Whatever these clean-up efforts entailed, she "was prevented by the County from [carrying them out] for several more weeks." (¶ 85.)[2]

## III. ANALYSIS

Plaintiffs bring four causes of action against Lake County:

- sex-based hostile work environment in violation of Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. §§ 2000e-2(a) ("Claim 1");

- violation of the Fourteenth Amendment's equal protection clause, by way of 42 U.S.C. § 1983 ("Claim 2");

- retaliation in violation of Title VII, specifically 42 U.S.C. §§ 2000e-3(a) ("Claim 3"); and

- retaliation for constitutionally protected speech in violation of the First Amendment, by way of 42 U.S.C. § 1983 ("Claim 4").

(ECF No. 7 at 17–25.)

Lake County first challenges "the Plaintiffs' 42 U.S.C. § 1983 claim" (apparently overlooking that there are two of them), and then attacks "[a]ll claims brought against

---

[2] As of January 24, 2019, the date the Amended Complaint was filed, Undersheriff Mendoza's trial on the charges relating to Plaintiffs had yet to take place. (¶ 91.) One day later, the Lake County District Court dismissed the charges for lack of proper evidence. (*See* ECF No. 25-1.)

[the County] pursuant to Title VII." (ECF No. 20 at 6.) The Court will address these arguments in turn.

## A.    Section 1983 Claims

### 1.    _Monell_ Liability Generally

Section 1983 imposes liability on

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. The Supreme Court held in _Monell v. Department of Social Services_ that "person," as used in this statute, includes "municipalities and other local government units," more specifically, "local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. 658, 691 & n.54 (1978).[3]

However, a local government unit can be liable for damages under 42 U.S.C. § 1983 only when the its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." _Id._ at 694. The Supreme Court has thus "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted

---

[3] The Eleventh Amendment reads, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court construes this language to mean, among other things, that states may not be sued (even by their own citizens) for money damages in federal court. _See Hans v. Louisiana_, 134 U.S. 1, 10–15 (1890).

legislative body or of those officials whose acts may fairly be said to be those of the municipality," rather than holding the municipality liable simply because it employed a constitutional wrongdoer. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997) ("*Bryan County*").

The relevant policy or custom can take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated). But, whatever species of policy or custom is alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404 (emphasis in original).

2.    Claim 2 (Equal Protection)

Claim 2 alleges that the sexual harassment Plaintiffs experienced at the Sheriff's Office was a form of sexual discrimination prohibited by the Equal Protection Clause of the Fourteenth Amendment. (¶¶ 105–06, 108.) Claim 2 further alleges: "The sexual

harassment that Plaintiffs were subjected to was so severe or pervasive at the Lake County Sheriff's Office, that it was an accepted custom or practice."  (¶ 110.)  Lake County contends that Plaintiffs allege nothing to show that Lake County, as opposed to the Sheriff's Office, "maintained any custom or policy relevant to [their] 42 U.S.C. § 1983 claim, or that anyone followed any specific custom or policy."  (ECF No. 20 at 6.) Lake County emphasizes that, under the Colorado Constitution, it is a separate entity from the Sheriff's Office.  (*Id.*)

Plaintiffs respond, "[T]here is no doubt that the County and Sheriff's Office are statutorily [*sic*] separate entities, [but] discovery is needed to determine whether the County exercised 'actual' or 'de facto' control over the Sheriff's Office."  (ECF No. 26 at 1.)  Later, Plaintiffs reaffirm that they "do not contest [Lake County's] description with respect to Sheriff Fenske being an 'independent constitutional officer' or 'a distinct position' under the 'Colorado Constitution' [citing ECF No. 20 at 6–7]," but "the County may still be found liable for the harm to Plaintiffs if it exercised 'actual' or 'de facto' control over employment decisions at the Sheriff's Office."  (*Id.* at 6.)  Plaintiffs then invoke the "'joint-employer' test" (discussed below), and assert that the Amended Complaint plausibly pleads that this test is satisfied.  (*Id.* at 6–8.)

Both parties are, perhaps unwittingly, jumping back and forth between § 1983 and employment discrimination liability standards.  They are not the same, but the parties' confusion is understandable because one of the more important cases on this topic, *Bristol v. Board of County Commissioners of County of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) (en banc), interweaves a discussion of both causes of action and can be misread as endorsing an overlap between § 1983 and Title VII that

does not exist.

The Court will discuss *Bristol* in further detail below.  Looking at the bigger picture, however, the question raised by the County's motion is, "Who is the proper defendant to a § 1983 lawsuit alleging an injury caused by a policy or practice of the county sheriff?  The sheriff's office, or the county itself (through its board of commissioners)?"[4]  As explained below, the answer, ultimately, is that it does not matter because a Colorado statute requires judgments against county officers to be paid from general county funds or a special tax—so whether the sheriff's office or the county is sued, the county would pay any judgment.

a.      *Stump v. Gates and Capacity to Be Sued*

One oft-cited decision from this District, *Stump v. Gates*, 777 F. Supp. 808 (D. Colo. 1991), is interpreted as establishing that the county, not the sheriff's office, is the proper defendant because the county has the capacity to sue or be sued while the sheriff's office, as a subdivision of the county, does not.  *See id.* at 814–15.  *Stump* actually held that city police departments are not separately suable from the cities that organized them, and that county coroner's offices are not separately suable from the counties they serve.  *Id.*  But many decisions from this District apply *Stump* to sheriff's offices.  *See Johnson v. Correct Care Sols., LLC*, 2018 WL 7372075, at *4 (D. Colo. Nov. 21, 2018) (applying *Stump* to dismiss a sheriff's office as not suable separately under § 1983, and citing numerous cases doing the same), *report and recommendation adopted*, 2019 WL 764602 (D. Colo. Feb. 21, 2019).

---

[4] In Colorado, "the exclusive method by which jurisdiction over a county can be obtained" is to sue the board of county commissioners.  *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967) (construing what is now codified at Colo. Rev. Stat. § 30-11-105).

The undersigned disagrees that sheriff's offices in Colorado have no capacity to be sued. In federal court, a municipal entity's "[c]apacity to sue or be sued is determined * * * by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3); *cf.* Martin A. Schwartz, *Section 1983 Litigation Claims and Defenses* §§ 5.02[F], 7.03 (4th ed., supp. 2019-2) (discussing whether municipal departments may be sued directly). The most thorough Colorado decision in this regard as to sheriff's offices is *Tunget v. Board of County Commissioners of Delta County*, 992 P.2d 650 (Colo. App. 1999). There, the plaintiffs' car was struck by that of a Delta County deputy sheriff. *Id.* at 651. The plaintiffs brought suit against Delta County's board of commissioners, "alleg[ing] that Delta County, through the Board, is liable under the doctrine of *respondeat superior* for the negligence of the deputy sheriff in causing the accident." *Id.* The trial court dismissed for failure to state a claim, reasoning "that the sheriff is a public entity separate and apart from the Board." *Id.* The Court of Appeals affirmed. It surveyed relevant provisions of the Colorado Constitution and the Colorado Revised Statutes, as well as case law on the topic, and concluded that "the sheriff would be responsible for any injuries resulting from the deputy's alleged negligence. [¶] Accordingly, the trial court correctly held that the sheriff, rather than the county or the Board, would be liable for the actions of the deputy sheriff. Thus, the court properly dismissed the claims against the Board." *Id.* at 652.

Among many relevant statutes, *Tunget* noted Colorado Revised Statute § 30-10-522, which reads:

> Except in the case of a sheriff covered by insurance
> purchased pursuant to [a different section], in an action
> brought against a sheriff for an action done by virtue of the
> sheriff's office, if the sheriff gives notice thereof to the

> sureties on any bond of indemnity given by the sheriff, the judgment recovered therein shall be sufficient evidence of the sheriff's right to recover against such sureties, and the court, on motion, upon notice of five days, may order judgment to be entered against them for the amount so recovered, including costs.

Obviously the Colorado Legislature would not need to specify how a sheriff may recover on his or her indemnity bond "in an action brought against a sheriff for an action done by virtue of the sheriff's office" if no such action could be brought against the sheriff.

Moreover, the Tenth Circuit's *Bristol* decision, mentioned previously, makes no sense if a sheriff's office is not separately suable. In *Bristol*, a detention deputy working for the Clear Creek County Sheriff's Office was terminated because a medical condition prevented him from performing the essential functions of his job. 312 F.3d at 1215. The deputy sued both the board of county commissioners and the sheriff's office under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq. Id.* at 1215–16. "At trial, defendants moved for judgment as a matter of law, arguing that only the Sheriff was [the deputy's] employer," but "[t]he district court ruled that *both* the Sheriff and the Board of County Commissioners were [the deputy's] employers as a matter of law," and "[a] jury [then] returned a verdict for [the deputy], awarding him damages and attorney's fees." *Id.* at 1216 (emphasis in original). The question presented to the *en banc* Tenth Circuit was whether the board of county commissioners was the deputy's "joint employer" alongside the sheriff's office, or, alternatively, whether the sheriff's office and board of county commissioners were effectively a "single employer." *Id.* at 1216–18.

Interpreting *Tunget* and the authorities on which *Tunget* relied, the Tenth Circuit held in *Bristol* that "Sheriffs have exclusive control over the hiring and firing of their employees." *Id.* at 1219. This is probably an overstatement—the relevant authorities

seem to give sheriffs exclusive control only over their deputies, not necessarily all of their employees.  *See*, *e.g.*, Colo. Rev. Stat. § 30-10-506 ("Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will . . . ."); *Tunget*, 992 P.2d at 652 ("The sheriff, not the county or the Board, has the right of control with respect to the deputies.").  Regardless, *Bristol* went on to say that "no evidence was introduced suggesting that the Board had any de facto authority over the Sheriff's employment decisions."  312 F.2d at 1219.  Thus, the deputy could not satisfy the joint-employer test.  *Id.* at 1220.  The various factors of the single-employer test likewise cut against the deputy.  *Id.* at 1220–21.  The Tenth Circuit therefore remanded the case to the District Court "with instructions to dismiss this action as to the Board."  *Id.* at 1221.  The obvious implication is that a lawsuit against the sheriff's office only is a legitimate lawsuit.

        b.    *Scope of* Bristol

However, simply because a Colorado sheriff's office has capacity to be sued apart from its corresponding county does not necessarily mean that it is the proper defendant, to the exclusion of the county, in a *Monell* action alleging an injury caused by a policy attributable to the sheriff.  Indeed, certain dicta in *Bristol* has been interpreted as establishing that sheriffs are policymakers for the county, at least within the scope of their authority—meaning the county (through its board of commissioners) is the proper defendant in a *Monell* claim attacking the sheriff's actions.  For the reasons explained below, the Court disagrees that *Bristol* ever established as much.

Attempting to persuade the Tenth Circuit to preserve the jury's verdict against the Clear Creek County board of commissioners, the deputy in *Bristol* argued from "cases involv[ing] § 1983 actions in which the acts of the Sheriff were held to set the 'official

12

policy' of the County, thus making the County liable under § 1983 for the Sheriff's unconstitutional actions and those of the Sheriff's employees." 312 F.3d at 1221. The Tenth Circuit observed, "These cases do suggest that counties can be held liable for the misdeeds of Sheriffs and their employees when the Sheriff is held to set 'official policy' for the county." *Id.* (citing *Lucas v. O'Loughlin*, 831 F.2d 232, 233 (11th Cir. 1987); *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *Blackburn v. Snow*, 771 F.2d 556, 571 (1st Cir. 1985); and *Marchese v. Lucas*, 758 F.2d 181, 188–89 (6th Cir. 1985)). But, under the circumstances of the case, "the Sheriff was not setting 'official policy' in firing [the deputy]," so "the § 1983 cases cited by [the deputy were] not analogous." *Id.*

*Bristol*'s observation, "[t]hese cases do suggest . . .", is surely dicta because the deputy had not brought a § 1983 claim, and because the Tenth Circuit does not create holdings by describing the "suggestion" of extra-circuit authority. Moreover, the key phrase is "*when the Sheriff is held* to set 'official policy' for the county" (emphasis added), or in other words, when a court determines that the sheriff is a final policymaker for the county. *Bristol* never implied that all county sheriffs everywhere, or even just in Colorado, *are* policymakers. *Bristol* only noted, accurately, that extra-circuit decisions have found the sheriffs at issue to be policymakers for their respective counties and therefore the relevant county was liable for the sheriff's decisions.

But *Bristol*'s language on this topic has taken on a life of its own in subsequent case law, mostly divorced from what *Bristol* actually says. For example, in *Gonzales v. Martinez*, 403 F.3d 1179 (10th Cir. 2005), which presented a § 1983 claim of deliberate indifference in the county jail, the court noted that the plaintiff had erroneously named only Huerfano County, Colorado, as the defendant—not its board of county

commissioners, or even the county sheriff.  *Id.* at 1182 n.7.  The court decided that it did

not need to address the issue because the plaintiff would fail to state a claim even if he

had named the proper defendant.  *Id.*  But, it said,

> [h]ad Plaintiff claimed the Sheriff set official policy of the
> County or was following policy established by the County in
> the operation of the jail, we might have to reach a different
> conclusion.  *See* [*Bristol*, 312 F.3d] at 1221 ("counties can
> be held liable for the misdeeds of Sheriffs and their
> employees when the Sheriff is held to set 'official policy' for
> the county.").

*Id.*

*Gonzales*'s quotation from *Bristol* omits *Bristol*'s qualifying phrase, "these cases

do suggest," and therefore presents the rest of the *Bristol* quotation as if a holding.

*Gonzales* also seems to be reading the phrase "when the Sheriff is held to set 'official

policy'" as if it says "the Sheriff has been held to set 'official policy.'"  Of course, this

portion of *Gonzalez* (like the portion of *Bristol* it relies upon) is dicta because the plaintiff

had failed to state a claim in any event, and the Tenth Circuit does not create holdings

through statements about what it "might" be required to do in situations not before it.

Lower courts have nonetheless cited *Bristol* or *Gonzales*, or both, for the notion

that county sheriffs in Colorado set policy for the county, so the proper defendant in a

§ 1983 action based on the sheriff's policies is the board of county commissioners.

*See, e.g.*, *Anglin v. City of Aspen*, 552 F. Supp. 2d 1205, 1216 (D. Colo. 2008) ("[the]

Pitkin County Commissioners are liable for the consequences of Sheriff Braudis' policy,

as set for Pitkin County, with regard to involuntary sedation of individuals in custody"

(citing *Bristol* and *Gonzales*)); *Lucero v. Hilkey*, 2008 WL 552863, at *24 (D. Colo. Feb.

27, 2008) (if the plaintiff had claimed an injury from a policy set by the sheriff, "an action

might lie against Mesa County, through the Board of County Commissioners" (citing

*Bristol* and *Gonzales*)), *aff'd sub nom. Lucero v. Mesa Cnty. Sheriff's Dep't*, 297 F. App'x 764 (10th Cir. 2008).[5]  Even the undersigned has done so.  *See Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1126–27 (D. Colo. 2014) (on the authority of *Bristol*, rejecting board of county commissioners' argument that it should be dismissed because the Sheriff's office was the proper defendant), *aff'd in part, appeal dismissed in part*, 810 F.3d 750 (10th Cir. 2016).[6]

The Court agrees that *if* a Colorado sheriff is a final policymaker for the entire "body corporate and politic" known as "the county," Colo. Rev. Stat. § 30-11-101(1), then the county may be held liable in a § 1983/*Monell* lawsuit for an injury inflicted by an unconstitutional sheriff-made policy.  However, no authority of which the Court is aware has analyzed whether *Colorado law* makes Colorado sheriffs policymakers over the entity dubbed "the county."  Rather, the relevant cases all trace back to *Bristol*'s dicta concerning the "suggest[ion]" of extra-circuit authority about the relationship of the sheriffs at issue to their counties.  312 F.3d at 1221.  The Court thus turns to an examination of relevant Colorado law.

c.    *Status of Sheriffs Under Colorado Law*

The Colorado Constitution creates the office of county sheriff, but it does not create the office independent of the county: "There shall be elected in each county . . . one sheriff . . . ."  Colo. Const. art. XIV, § 8.  This section goes on to refer to the sheriff and other constitutionally mandated county roles as "officers," demonstrating that the

---

[5] The Tenth Circuit's affirmance does not mention the issue of whether a sheriff is a final policymaker for the county.

[6] The Tenth Circuit's affirmance only addresses qualified immunity issues for individual defendants.  It says nothing about sheriff's office liability versus board of county commissioners liability.

sheriff is an officer of the entity known as "the county," not just of the entity known as the "sheriff's office." From this perspective, it is difficult to say that a Colorado sheriff is something other than a "final policymaker" for *Monell* purposes (*see* Part III.A.1, above), at least within the sheriff's constitutional and statutory sphere of authority.

On the other hand, the sheriff's sphere of authority essentially defines the concept of the "sheriff's office." *See, e.g.*, Colo. Rev. Stat. §§ 30-10-503 (sheriff has "possession of the courthouse and jail of the county"), -504 (sheriff appoints undersheriff "to serve during the pleasure of the sheriff"), -506 ("Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will . . . ."), -511 ("the sheriff shall have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer"), -515 ("The sheriff, in person or by his undersheriff or deputy, shall serve and execute, according to law, all processes, writs, precepts, and orders issued or made by lawful authority and to him directed . . . ."); -516 ("It is the duty of the sheriffs, undersheriffs, and deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots, and unlawful assemblies and insurrections."). And if the sheriff may be sued "for an action done by virtue of the sheriff's office," *id.* § 30-10-522, the question arises: on what authority can the larger entity known as "the county" be sued for the same conduct? Why should the county be held liable for the deeds of a separately suable entity, with its own budget?[7]

As it turns out, however, Colorado law forecloses any notion that a sheriff's office

---

[7] The sheriff's office is deemed a "spending agency" within the county that must yearly submit a budget proposal to, and receive approval from, the board of county commissioners. *See* Colo. Rev. Stat. §§ 29-1-105, 30-2-106(1), 30-25-101; *Tihonovich v. Williams*, 582 P.2d 1051, 1053–56 (Colo. 1978).

should be held to account alone, independent from "the county." By statute, any money judgment "against a county of this state in the name of its board of county commissioners or against any county officer in an action prosecuted by or against him in his official capacity or name of office" must be paid either out of "the ordinary county fund" or through a special property tax, which "shall be paid over, as fast as collected by the [treasurer], to the judgment creditor." Colo. Rev. Stat. § 30-25-104(1). In other words, when a *Monell* claim is based on a sheriff-made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical, because the county will pay regardless.

### d. *Synthesis & Application*

Here, Lake County argues that Plaintiffs' Claim 2 fails to plead a policy attributable to the County, as opposed to the Sheriff's Office. (ECF No. 20 at 6.) The argument has some merit, but the Court "will not dismiss [Claim 2] at this stage because doing so would not serve the purposes of a Rule 12(b)(6) motion." *Estate of Walter ex rel. Klodnicki v. Corr. Healthcare Cos., Inc.*, 232 F. Supp. 3d 1157, 1164 (D. Colo. 2017). Lake County must pay any judgment against the Sheriff's Office, so the only possible significance dismissal might have is in the scope of discovery. As the Court has said in similar situation, no such dismissal is warranted if discovery would either be unchanged or more complicated—which would be the result here:

> The standards for evaluating Rule 12(b)(6) motions, as stated in *Twombly* and *Iqbal*, are transparently motivated by the costs and other burdens of discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Twombly*, 550 U.S. at 557–60 (discussing at length the "in terrorem increment of the

settlement value" caused by allowing insufficiently supported claims to go to discovery). In this case, the purposes of *Twombly* and *Iqbal* would not be advanced by an order dismissing [Claim 2 as against the County]. Given that [the County] does not challenge [Plaintiffs' First Amendment retaliation theory, *see* Part III.A.3, below], all of the relevant Defendants will remain in the case regardless and will be subject to discovery. [The County] has not explained how such discovery would be limited in any material way if [Claim 2] were dismissed [against it].

Moreover, . . . if the Court were to dismiss [Claim 2 against the County only], it actually might complicate discovery, because [the County] would have an incentive to object to any interrogatory, deposition question, etc., to the extent [the County] believes it is really directed at [the County as opposed to the Sheriff's Office]. But the distinction [under the circumstances] is likely to be fairly fine, and not worth consuming the parties' and Court's time and resources in light of all of the claims that are going forward anyway.

*Id.*

The Court recognizes that, by the time of summary judgment and/or trial, Plaintiffs will need to explain clearly the policy at issue and the policymaker(s) to whom the policy is attributable. Even if the County would be responsible for paying any judgment regardless, the Court and the parties cannot evaluate the relevance and probative value of the evidence without knowing Plaintiffs' precise theory. At this stage however, no such evaluations are needed.

For all these reasons, Lake County's motion is denied as to Plaintiffs' Claim 2.

3.    Claim 4

The story is much simpler as to Plaintiffs' Claim 4, which alleges retaliation for exercising First Amendment rights. Plaintiffs have alleged that the County either forbade the new sheriff (Reyes) from rehiring Plaintiffs, or at least convinced her not to

do so, until this lawsuit ends.  (¶¶ 74–79, 145.)[8]

The County does *not* argue that Plaintiffs' choice to file a lawsuit, particularly one against a governmental entity, is *not* protected by the First Amendment.  *Cf. Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances").  Indeed, the County seems oblivious to Plaintiffs' First Amendment claim against it.  (*See* ECF No. 20 at 2 ("Plaintiffs allege they were subjected to 'unlawful discrimination' and 'retaliation' *thereby creating* a hostile work environment" (emphasis added)); *id.* at 6 (referring to "Plaintiffs' 42 U.S.C. § 1983 claim" in the singular).)  Accordingly, Plaintiffs have not failed to state a § 1983 claim against the County for retaliation in violation of the First Amendment.  This portion of the County's motion to dismiss will be denied.

B.    **Title VII Claims**

Lake County next argues, "All claims brought against the [County] pursuant to Title VII [necessarily referring to Claims 1 and 3], should be dismissed, as the Sheriff is an independent constitutional officer under the Colorado Constitution, and is therefore not subject to the control or supervision of the [County]."  (ECF No. 20 at 6.)  The County cites *Bristol* as support (*id.* at 7), but fails to acknowledge that *Bristol* affirmed that a county, although a formally separate entity for employment discrimination purposes, might nonetheless be a "joint employer" alongside, or "single employer" effectively merged with, a sheriff's office, *see* 312 F.3d at 1217–21.

_____

[8] As mentioned in Part III.A.2.a, above, sheriffs in Colorado have plenary and exclusive authority over hiring and firing their deputies, but the Court is aware of no principle of Colorado law that sheriffs have similar power over their "civilian" employees (those not commissioned as peace officers).  Thus, it is plausible that the hiring decision might need County approval.

"[I]ndependent entities [may be] joint employers if the entities share or co-determine those matters governing the essential terms and conditions of employment. In other words, courts look to whether both entities exercise significant control over the same employees." *Id.* at 1218 (internal quotation marks and citations omitted). Here, Plaintiff has plausibly pleaded the possibility that the County was a joint employer as to dispatchers like Plaintiffs. The allegations that the County had either control or influence over the new sheriff's choice to rehire Plaintiffs reasonably suggest that the County "share[s] or co-determine[s] those matters governing the essential terms and conditions of employment." *Id.* The County's motion will therefore be denied as to Plaintiffs' Title VII claims.

## IV. CONCLUSION

For the reasons set forth above, Lake County's Motion to Dismiss Plaintiffs' Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P 12(b)(6) (ECF No. 20) is DENIED.

Dated this 6th day of November, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge