**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-3249-WJM-NYW

MARIA CHAVEZ,
CHELSA PARSONS, and
NICOLE GARNER,

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY, COLORADO, in its official capacity;
THE LAKE COUNTY SHERIFF'S OFFICE, a governmental entity;
RODNEY FENSKE, in his official and individual capacity;
FERNANDO MENDOZA, in his official and individual capacity;
MARY ANN HAMMER, in her official and individual capacity,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO STRIKE

Plaintiffs Maria Chavez, Chelsa Parsons, and Nicole Garner bring this lawsuit against the Board of County Commissioners of Lake County, Colorado ("Lake County" or "County"), the Lake County Sheriff's Office ("Sheriff's Office"), former Lake County Sheriff Rodney Fenske ("Sheriff Fenske"), former Lake County Undersheriff Fernando Mendoza ("Undersheriff Mendoza"), and the Sheriff's Office's dispatch supervisor, Marianne Hammer ("Hammer"). Plaintiffs allege various causes of action arising from sexual harassment they experienced while working for the Sheriff's Office.

Currently before the Court is Plaintiffs' Motion to Strike Defendants' *Faragher/Ellerth* Affirmative Defense Pursuant to Fed. R. Civ. P 12(f). (ECF No. 25.) Although Plaintiffs frame the motion as if directed at an affirmative defense asserted by

all Defendants, only Sheriff Fenske and the Sheriff's Office (separately represented) have asserted a *Faragher/Ellerth* defense. For the reasons explained below, the motion is denied.

## I. LEGAL STANDARD

Rule 12(f) permits a court to "strike from a pleading an insufficient defense." "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." *FDIC v. Isham*, 782 F. Supp. 524, 530 (D. Colo. 1992).

## II. BACKGROUND

The Court has provided a relatively complete description of Plaintiffs' allegations in its order filed earlier today denying Lake County's motion to dismiss. (ECF No. 105.) For purposes of the motion to strike now at issue, the following suffices.

Plaintiffs worked as dispatchers at the Sheriff's Office until their departures in November 2017 (Chavez and Garner) and October 2018 (Parsons). (¶¶ 3–5.)[1] While there, they allegedly faced a sexually hostile work environment due to frequent and prolonged sexual harassment by Undersheriff Mendoza, whose conduct was "perpetuated" by Sheriff Fenske and others. (¶¶ 12–14, 16–28.) Mendoza also explicitly discouraged complaints to the County's human resources department, asserting that the Sheriff's Office was primarily responsible for its own human resources matters. (¶¶ 30–34.) More specifically, Plaintiffs allege:

> Although the County theoretically has a written policy informing County employees how to report sexual harassment to Human Resources, the policy was not in effect at the Sheriff County's Office.

---

[1] All "¶" citations, without more, are to the Amended Complaint (ECF No. 7), which is the currently operative complaint.

> On January 15, 2017, Undersheriff Mendoza sent an email to all Sheriff's Office employees dissuading them from contacting the County's Human Resources Department.
>
> In that email, he informed staff that "I will not tolerate this any more" referring to calling the County's Human Resources Department, and asserting, "WE are primarily responsible for our own HR and finance duties." (emphasis in original)
>
> In that email, Undersheriff Mendoza also instructed the entire Sheriff's Office staff that "if you have questions, comments or concerns about ANYTHING related to HR, finance, benefits, etc…you are to follow your chain of command which means you will go to your supervisor then ME." (emphasis in original)

(¶¶ 29–32.)

Plaintiff Garner eventually complained about the harassment to a sheriff's deputy, who relayed Garner's accusations to a Lake County deputy district attorney. (¶¶ 40–41.) The district attorney's office opened an investigation into Mendoza's conduct. (¶ 42.) That investigation led to criminal charges against Mendoza stemming out of his treatment of Plaintiffs. (¶¶ 11(f), 12.) The investigation also revealed that Mendoza had been sexually exploiting his stepdaughter, leading to additional charges. (¶¶ 11(a)–(e), 15.)

In December 2018, Undersheriff Mendoza stood trial on the sexual misconduct charges relating to his stepdaughter (the misconduct charges relating to Plaintiffs were severed), and the jury convicted him on two counts, including one felony count. (¶¶ 90–91.) For reasons explained below, the misconduct charges relating to Plaintiffs were later dismissed by the trial court.

### III. ANALYSIS

Among other causes of action, Plaintiffs assert claims for a sex-based hostile work environment and retaliation for exercising their right to oppose such an

3

environment, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) & -3(a). (¶¶ 94–103, 119–32.) The *Faragher/Ellerth* defense allows an employer to escape some Title VII liability if it can prove "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 745 (10th Cir. 2014) (internal quotation marks omitted).

Tracking these requirements, Sheriff Fenske's Answer to Plaintiffs' Amended Complaint asserts that "Plaintiff's claims under Title VII are subject to the *Faragher-Ellerth* affirmative defense. . . . Among other things, the employer had effective anti-harassment policies and complaint procedures. Plaintiffs unreasonably failed to take advantage of these preventative or corrective opportunities." (ECF No. 23 at 4, ¶ 3.) The Sheriff's Office, while not specifically invoking "*Faragher/Ellerth*," similarly asserts that Plaintiffs knew of the Office's antiharassment policies and unreasonably failed to take advantage of them. (ECF No. 39 at 17, ¶¶ 2–6.)[2]

Plaintiffs assert three potential bases to strike Sheriff Fenske's affirmative defense, all of which are convoluted. Adding further convolution, Plaintiffs say that these same arguments require the Court to prospectively forbid all other Defendants from asserting the defense. (ECF No. 25 at 7.)

---

[2] Individuals normally cannot be liable under Title VII unless the individual him- or herself is considered the "employer." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 n.1 (10th Cir. 2007). "Supervisory employees acting in their official capacities, however, may be named as defendants in a Title VII action as a means to sue the employer under an agency theory." *Id.* Thus, naming Sheriff Fenske in addition to the Sheriff's Office appears redundant. But neither of these Defendants has moved to be dismissed on these grounds.

The Court will address all of Plaintiffs' arguments, although in a different order then Plaintiffs present them, because some of Plaintiffs' later arguments provide context for earlier arguments.

## A. Judicial Estoppel

Plaintiffs invoke the doctrine of judicial estoppel. (*Id.* at 10–12.) "This rule . . . generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). Whether to apply judicial estoppel turns on a three-factor analysis:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (internal quotation marks and citations omitted; alterations incorporated; emphasis in original).

Plaintiffs' argument for judicial estoppel relates to Undersheriff Mendoza's criminal proceedings. As noted above, Mendoza was charged with crimes arising from his mistreatment of his stepdaughter and crimes arising from his mistreatment of Plaintiffs. The latter charges were two counts of second-degree official misconduct (*see* ECF No. 25-2 at 10–11) in violation of Colorado Revised Statute § 18-8-405(1)(b). That statutory provision reads: "A public servant commits second degree official misconduct if he knowingly, arbitrarily, and capriciously * * * [v]iolates any statute or lawfully adopted rule or regulation relating to his office." The prosecution's theory was that the Sheriff's

5

Office's policy handbook, which forbids sexual harassment, was the lawfully adopted rule or regulation relating to Mendoza's office.  (*See* ECF No. 25-3 ¶¶ 3–4.)

Mendoza moved to have the official misconduct charges dismissed, arguing that the Sheriff's Office's policy handbook could not qualify as a lawfully adopted rule or regulation.  (*Id.* ¶ 4.)  The Lake County District Court, Judge Karen Ann Romeo presiding, agreed.  (ECF No. 25-1.)  She held that a "lawfully adopted rule or regulation" is one that has been promulgated through the various notice-and-comment procedures specified in Colorado's analog to the Administrative Procedures Act.  (*Id.* at 2 (citing Colo. Rev. Stat. § 24-4-103(2) & (2.5)).)  Furthermore, "no evidence was presented to the grand jury to support the assertion that the LCSO policy handbook was in fact a lawfully adopted rule or regulation" under those standards.  (*Id.*)  Accordingly, Judge Romeo dismissed the official misconduct charges.  (*Id.* at 3.)

Plaintiffs argue that Undersheriff Mendoza's successful argument in state court should judicially estop *others* (Sheriff Fenske and the Sheriff's Office) from asserting a *Faragher*/*Ellerth* defense in this lawsuit, and should prevent *the remaining Defendants* from doing the same (assuming they intend to).  (ECF No. 25 at 11–12.)  The argument is absurd—to state it is to refute it.  The Court is concerned that Plaintiffs' counsel would bring such an obviously meritless argument.

For clarity, however, the Court notes that the argument would fail even if directed solely at a hypothetical *Faragher*/*Ellerth* asserted by Mendoza.  Convincing a judge that the an office policy handbook was not promulgated under formal administrative procedures is not the same as convincing a judge that a policy never existed.  Plaintiffs cite nothing for the implied proposition that a policy worthy of the *Faragher*/*Ellerth*

6

defense must have been promulgated according to formal administrative procedures (itself an absurd proposition, considering that Title VII covers private employers as well, who are not at all bound by administrative procedure laws). Thus, Mendoza's hypothetical defense would not be "clearly inconsistent with [his] former position," and so fails at the first element of the judicial estoppel test. *Eastman*, 493 F.3d at 1156.

**B.     Issue Preclusion**

Plaintiffs recycle their judicial estoppel argument as an issue preclusion/collateral estoppel argument. (ECF No. 25 at 12–14.) The elements of issue preclusion are:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992). Only the second element is satisfied here. The argument is therefore frivolous on its face and is rejected.[3]

**C.     Insufficiency**

The final argument the Court must address is that the *Faragher/Ellerth* defense is "legally unsupportable." (ECF No. 25 at 9.) Quoting from Lake County's motion to dismiss, Plaintiffs assert that

> Sheriff Fenske is an "independent constitutional officer under the Colorado constitution" and therefore is "not subject to the control of supervision of the Board of County

---

[3] In particular, Plaintiffs do not attempt to explain how the fourth element is satisfied, arguing instead that "the question of whether the Sheriff's Office lawfully adopted a sexual harassment policy was fully litigated in criminal court proceedings" (ECF No. 25 at 13)—in other words, choosing to ignore the requirement that it must be fully litigated *by the party against whom issue preclusion is asserted*.

7

> Commissioners" or anyone else. [ECF No. 20, at 6]. The County similarly argues that Sheriff Fenske had "exclusive control over the hiring and firing of their employees." [*Id.* at 6–7]. Accordingly, the *Faragher-Ellerth* defense is unavailable to the Defendants in this case because Sheriff Fenske and Undersheriff Mendoza functioned as the Sheriff's Office's alter ego.

(*Id.* (bracketed citations in original).)

This argument is a *non sequitur*. The Sheriff's Office's separateness from the County does not mean that the Sheriff's Office had no policy sufficient for a *Faragher/Ellerth* defense. If Plaintiffs' "alter ego" accusation is meant to imply that whatever policy existed, it was subsumed by the fact that the persons responsible for carrying out the policy were also the harassers, Plaintiffs are free to attempt to prove as much at summary judgment or trial. On the pleadings, however, this is not an undisputed fact and so not an appropriate basis to strike any *Faragher/Ellerth* defense.

Plaintiffs further argue that, "according to the Board of County Commissioners (and by the other Defendants' acquiescence) the County's human resources department was powerless to mitigate Plaintiffs' injuries," meaning that there could not be a policy sufficient for a *Faragher/Ellerth* defense. (ECF No. 25 at 9.) This again refers to the County's motion to dismiss, and "Defendants' acquiescence" is Plaintiffs' attempt to attribute the County's dismissal arguments to all other Defendants because, "[a]lthough Plaintiffs opposed the Motion, none of the other Defendants have." (*Id.* at 5.)

Plaintiffs' acquiescence argument is strained. The Court is aware of no legal principle—and Plaintiffs cite none—that Defendant A is deemed to have adopted Defendant B's arguments when Defendant A fails to "oppose" Defendant B's motion directed at the plaintiff. Indeed, one might question whether Defendant A would even have standing to oppose such a motion. Regardless, the Court rejects Plaintiffs'

acquiescence argument.

As for the argument directed at the County, Plaintiffs' allegations about the human resource department's alleged powerlessness are no more than allegations at this point—they are not undisputed. And, again, the County has not yet asserted a *Faragher/Ellerth* defense. Accordingly, the Court has no reason to inquire whether the County could have a policy sufficient to sustain the defense.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Strike Defendants' *Faragher/Ellerth* Affirmative Defense Pursuant to Fed. R. Civ. P 12(f) (ECF No. 25) is DENIED.

Dated this 6th day of November, 2019.

BY THE COURT:

William J. Martinez
United States District Judge